UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                        :
MICHAEL A. CARDOZA,                                     :
                                                        :
                                   Plaintiff,           :          OPINION AND ORDER
                                                        :
                    -against-                           :          17 Civ. 7803 (GWG)
                                                        :
COMMISSIONER OF SOCIAL SECURITY,                        :
                                                        :
                                   Defendant.           :
                                                        :
----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

       Plaintiff Michael A. Cardoza ("Cardoza") brings this action pursuant to 42 U.S.C.

§ 405(g) for judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner") denying his claim for Supplemental Security Income and Disability Insurance

Benefits under the Social Security Act (the "Act").  Both parties have moved for judgment on

the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]  For the reasons stated below,

Cardoza's motion for a remand is granted and the Commissioner's motion is denied.

I. BACKGROUND

       A.  Procedural History

       Cardoza applied for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") on October 8, 2013.  See Certified Administrative Record, filed Mar. 8, 2018

_____

       [1] See [Plaintiff's] Notice of Motion, filed May 4, 2018 (Docket # 13); Memorandum of
Law in Support of the Plaintiff's Motion for Judgment on the Pleadings, filed May 4, 2018
(Docket # 14) ("Pl. Mem."); Notice of Cross-Motion, filed Aug. 3, 2018 (Docket # 21);
Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the
Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed Aug. 3,
2018 (Docket # 22) ("Def. Mem."); [Plaintiff's] Reply Brief, filed Aug. 23, 2018 (Docket # 23)
("Pl. Reply").

(Docket # 11) ("R."), at 26, 78, 85, 155.  He alleged that his disability began on August 1, 2013, when he was 40 years old.  R. 26, 264.

The Social Security Administration ("SSA") denied the applications and Cardoza sought review by an Administrative Law Judge ("ALJ").  R. 115-16.  The ALJ held an initial hearing on December 15, 2015, R. 78-84, and an additional hearing on May 10, 2016, R. 48-74.  In a written decision dated October 4, 2016, the ALJ found Cardoza not disabled within the meaning of the Act.  R. 26-40.  On August 28, 2017, the Appeals Council denied Cardoza's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  R. 1-5.  This action followed.

### B.  The Hearings Before the ALJ

Cardoza was represented by attorney Lawrence Mabes at his hearings.  R. 48, 79.  Because the ALJ had not received certain records from Dr. Alan Ng, Lincoln Medical Center, and Clay Avenue Health Center prior to the initial hearing, the initial hearing was limited to a cursory inquiry into the different facilities where Cardoza received treatment through 2014.  R. 79-82.  At the second hearing, Cardoza testified to experiencing physical pain and mental health issues.  R. 61-67.  He testified to being unable to stand for more than an hour and noted that his pinched nerve forces him to sit most of the time, and that he is unable to walk more than a block and a half before he needs to stop and rest.  R. 63.  In order to walk at all, he uses a cane.  R. 63.  Because of the pinched nerve, Cardoza also cannot sit for more than "45 minutes to an hour" before he has to stand again.  R. 63.  Likewise, he cannot lie down for more than an hour because he experiences discomfort in his left leg and back.  R. 64.  He cannot bend over without experiencing pain in his back and left leg, and thus he does not usually tie his shoes without help.  R. 64.  He did testify that he is able to tie his shoes "[i]f I have to do it," but that he can

only do so "little by little" and "would be in pain if I have to bend down." R. 64. Cardoza requires assistance from his daughters and wife to help with cooking, cleaning, shopping, and other home chores. R. 65. Cardoza relies on a medical taxi, paid for by Medicaid, to get to and from his medical appointments. R. 65.

Cardoza sees a psychiatrist due to various symptoms, consisting of not wanting to talk to his wife, crying spells, and anxiety with related chest tightness. R. 66. He attributes the anxiety to feeling "that everything is coming down on me," and explained, for example, that if he receives a bill in the mail, he becomes anxious and "can't function" because he fixates on the bill for up to three weeks at a time. R. 66. Cardoza takes medication as prescribed, and he testified that it "[l]ately" has helped "a little" but also that it "doesn't really help very much." R. 66. The side effects of his medication include nervousness, fatigue, and tiredness. R. 66-67. At some point prior to his onset date, he was employed cleaning kitchens in restaurants and performing housekeeping at a hotel. R. 61; see R. 302.

Dr. Chaim Eliav, a medical doctor certified by the American Board of Physical Medicine and Rehabilitation, R. 608, testified that the record supported a diagnosis of a degenerative tear of the medial meniscus in Cardoza's knee. R. 50-51. He also reported that there was suggestion of injury to the anterior cruciate ligament in the knee as well as a bulging disc and a herniated disc in his back. R. 50-51. He identified the existence of other conditions in the spine, tenderness in both heels, and the fact that Cardoza was obese. R. 51-52. Dr. Eliav found that although there was diminished reflex capacity in the left knee, which would lead to difficulty lifting items over 10 pounds, Cardoza was able to "ambulate even without an assistance device." R. 53-54. Dr. Eliav noted that Cardoza "would not be able to stand for more than two hours in a day," R. 54-55, and that he would need to "take a break from standing every half hour for five

minutes," R. 55. Further, he could sit for only six hours total during the day, and would need to take an hourly break. R. 55.

Dr. Jennifer Blitz, a clinical psychologist, R. 609, testified that the record showed a diagnosis for Cardoza of "generalized anxiety disorder," an "unspecified depressive disorder," and "polysubstance dependance," which was in remission. R. 58. Though she found "insufficient documented symptoms of depression to support a diagnosis of major depressive disorder," she noted that Cardoza's "two severe mental impairments . . . do impose some mental functional limitations on [him]," which were not being able to interact with the public, experiencing anxiety in crowds and around people, paranoia, and being limited to doing "simple, routine tasks." R. 58-59.

Amy Leopold, identified as a "vocational expert" ("VE"), testified that a hypothetical individual with physical and mental limitations and restrictions identified by the ALJ would be able to perform several unskilled and sedentary nationally-available jobs. R. 67-72.

C. The Medical Evidence

Both Cardoza and the Commissioner have provided summaries of the medical evidence contained in the administrative record. See Pl. Mem. at 2-12; Def. Mem. at 2-15. While the Commissioner's summary is more detailed, Cardoza's summary is substantially consistent with it. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed Mar. 9, 2018 (Docket # 12), ¶ 5, and neither party has done so. Accordingly, the Court adopts Cardoza's and the Commissioner's summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D. The ALJ's Decision

The ALJ denied Cardoza's application for DIB and SSI on October 4, 2016. R. 40. Following the five-step process set forth in SSA regulations, the ALJ found at step one that Cardoza had not engaged in "substantial gainful activity since August 1, 2013, the alleged [disability] onset date." R. 28. At step two, the ALJ found that Cardoza had the following severe impairments: "osteoarthritic changes of the left knee, lumbar herniated disc, obesity, plantar fasciitis, generalized anxiety disorder, and unspecified depressive disorder." R. 28. The ALJ also noted that Cardoza had non-severe impairments of hypertension, asthma, and obstructive sleep apnea. R. 29. At step three, the ALJ concluded that none of Cardoza's severe impairments, singly or in combination, met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 29-30. The ALJ considered Listings 1.00, 11.00, and 12.00, as well as SSR 02-1p, in determining that Cardoza did not exhibit the necessary medical criteria. R. 29-30. The ALJ also considered the "paragraph B" criteria with respect to Cardoza's mental impairments. R. 29-30.

Before moving to step four, the ALJ assessed Cardoza's residual functional capacity ("RFC"). R. 30-38. The ALJ determined that Cardoza retained the RFC "to perform sedentary work . . . except when sitting, [Cardoza] must take a five minute break every hour in the vicinity of the work station, and when standing/walking [Cardoza] must take a five minute break every half hour in the vicinity of the work station." R. 30. In making this determination, the ALJ accorded varying weights to the opinions of Dr. Alan Ng, Dr. Michael Hossack, Dr. Lynne Portnoy, Dr. Johari Massey, Dr. P. Kennedy-Walsh, Dr. Chaim Eliav, and Dr. Jennifer Blitz. R. 31-37. Having determined Cardoza's RFC, the ALJ evaluated at step four whether Cardoza could continue his past work as a "kitchen helper" or "cleaner" and concluded that he could not. R. 38. At step five, the ALJ found that Cardoza's ability to perform "all or substantially all of

the requirements" of a level of "full range of sedentary work" was "impeded by additional

limitations." R. 39. However, based on the testimony of the VE, the ALJ determined that

Cardoza "would be able to perform the requirements of representative occupations," which exist

in "significant numbers in the national economy." R. 39-40. The ALJ thus determined that 20

C.F.R. §§ 404.1520(g) and 416.920(g) directed a finding of "not disabled" under the Act. R. 40.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d

370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229

(1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008);

Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131

(2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per

curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds

substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

     B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

7

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. part 404, subpart P, appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

    C. The "Treating Source" Rule

In general, the ALJ must give "more weight to medical opinions" from a claimant's treating source when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (the ALJ must give "a measure of deference to the medical opinion of a claimant's treating physician"). Treating sources "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ must accord "controlling weight" to a treating source's medical opinion as to the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Inversely, the opinions of a treating source "need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted); accord Selian, 708 F.3d at 418 ("The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is

supported by medical evidence and not contradicted by substantial evidence in the record.") (citations omitted).

If the ALJ does not give controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for the weight given to that opinion or face remand. See Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129-30). When assessing how much weight to give the treating source's opinion, the ALJ should consider the factors set forth in the Commissioner's regulations, which are (I) the length of the treatment relationship and the frequency of the examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion with relevant evidence, particularly medical signs and laboratory findings; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other relevant factors. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); see also Ellington v. Astrue, 641 F. Supp. 2d 322, 330-31 (S.D.N.Y. 2009) ("the ALJ should weigh the treating physician's opinion along with other evidence according to the factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(2)-(6)). The Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33; see also Greek, 802 F.3d at 375-77. However, a "slavish recitation of each and every factor" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order).

III. DISCUSSION

Cardoza raises six grounds for reversing the ALJ's decision: (1) the ALJ erred in failing

to apply the "treating physician rule" to Dr. Ng, Pl. Mem. at 15-16;[2] (2) the ALJ erred in finding

that Cardoza's asthma was not severe and in not considering the asthma's impact on Cardoza's

RFC, id. at 18; (3) the ALJ erred in weighing the opinion of Dr. Massey, who conducted a

psychiatric consultative examination, id. at 20; (4) the ALJ did not properly consider Cardoza's

obesity, id. at 22-23; (5) the ALJ did not include Cardoza's use of a cane in her hypothetical to

the vocational expert, id. at 24; and (6) the ALJ should have found Cardoza disabled based on

the VE's testimony, id. at 25.  We discuss each argument next.

    A.  Application of the "Treating Source" Rule

    In discussing the record and evaluating Cardoza's RFC, the ALJ assigned various

weights to the opinions of different physicians who opined on Cardoza's health over the years,

including the medical experts who opined on Cardoza's medical records during the

administrative hearing.  In making her RFC determination, the ALJ gave "[l]imited weight" to

the opinions of one of Cardoza's treating physicians, Dr. Ng.  R. 32.  Specifically, the ALJ gave

limited weight to Dr. Ng's opinion that Cardoza was "unable to work until further notice due to

low[er] back pain."  R. 32, 403.  In giving limited weight to Dr. Ng's medical opinions, the ALJ

found that Dr. Ng's opinion was not sufficiently specific, and that the determination as to

whether Cardoza is disabled is "a determination reserved to the Commissioner."  R. 32.  Cardoza

contends that greater weight should have been given to the opinions of Dr. Ng, "the

rehabilitation specialist who treated [him] more often than any other physician in the record."

Pl. Mem. at 16.  He also argues that Dr. Ng's opinions "were well supported by objective

medical tests and clinical findings" as well as other sources in the record.  Id. at 17.  He claims

that the ALJ's determination that Dr. Ng's statements were inconsistent with each other is

---

    [2]  The "treating source rule" is commonly referred to as the "treating physician rule."

contrary to the record.  Id. at 17-18.  After considering these arguments, we find no error in the ALJ's resolution of the conflicts among the medical opinions in the record.

As previously discussed in Section II, a treating source's opinion, like that of Dr. Ng, is given controlling weight if the opinion is well supported by objective medical and clinical evidence in the record.  If the opinion is inconsistent with other substantial evidence in the record, the opinion need not be given controlling weight.  See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2)); accord Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).  Additionally, an ALJ need not defer to a treating source's opinion on the ultimate issue of disability.  See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("the ultimate finding of whether a claimant is disabled and cannot work" is to be made by the ALJ and "[a] treating physician's statement that the claimant is disabled cannot itself be determinative"); accord Tracynger v. Comm'r, 269 F. Supp. 3d 106, 119-20 (S.D.N.Y. 2017) (citing cases).

The ALJ did not err in according "limited weight" to Dr. Ng's opinion that Cardoza was disabled.  See R. 403.  To start with, the ALJ reasoned that Dr. Ng's opinions did not warrant controlling weight because several of his statements were inconsistent with each other.  R. 33. For example, in August 2015, Dr. Ng noted that Cardoza could spend less than one hour in total standing or walking during an eight-hour work day, R. 447, and did not need to elevate his legs while sitting, R. 446.  But in December 2015, Dr. Ng noted that Cardoza could spend two hours total standing or walking during the same period, R. 639, and would have to elevate his legs while sitting, R. 638.  And on different occasions, Dr. Ng found that Cardoza's medical conditions existed since August 2013, R. 450 (August 2015 visit), and then since April 1998, R. 642 (December 2015 visit).  He also found postural limitations in 2014, but did not identify

any that were applicable in 2015.  R. 448, 640.  Despite finding Cardoza to be disabled, Dr. Ng also reported that Cardoza was "able to perform chores without significant pain" on his current dosage of medication.  R. 768.  He also noted on a different occasion that Cardoza was "doing well on [his] current dosage."  R. 809.  The finding that Cardoza had his condition since 1998 was particularly open to attack since, as the ALJ noted, R. 33, Cardoza had history of performing heavy and medium work in the intervening period, R. 68-69, 283-86, 302.

In addition, there was other evidence in the record that contradicts Dr. Ng's opinions and statements.  See R. 33.  For example, Dr. Ng's notes suggest that Cardoza could sit 15 minutes or less continuously and then had to alternate his posture, R. 445, 637; spend less than one to two hours total sitting with the same restriction, R. 446, 638; and stand or walk continuously for less than 15 minutes before having to lie down or recline, R. 446, 638; see Pl. Mem. at 16.  But Dr. Eliav testified at the administrative hearing that Cardoza "would be able to sit for a cumulative total of six hours in a day," albeit with an hourly five-minute break.  R. 55; see also R. 89.  The ALJ gave Dr. Eliav's opinion "great weight," R. 35, which was a reasonable exercise of her discretion.  See Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record."); accord Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (no error by ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence).  In another example, Dr. Ng opined that Cardoza's pain "interfered with his ability to ambulate" over his 34 examinations with Cardoza from November 2013 to December 2015.  It was this pain that rendered him disabled, according to Dr. Ng.  See Pl. Mem. at 16; R. 732-848.  But in July 2014, Dr. Gitkind of Montefiore Medical Center noted that Cardoza "report[ed] excellent and almost complete relief of pain following his first [steroid

injection for the pain] which lasted 5-6 days, followed by a return of pain, now back to baseline."

R. 535.  Dr. Gitkind noted that Cardoza "was quite encouraged" with the results of the

medication and was eager to proceed with additional injections, which were so scheduled.  Id.

Another physician noted only moderate limitation in Cardoza's range of motion, contradicting

Dr. Ng's opinion that Cardoza was disabled.  See R. 399-401 (Dr. Portnoy's conclusion that

Cardoza was only "moderately limited from lifting, bending, repeated kneeling, climbing,

stooping, and reaching").

Cardoza's testimony itself also appears to contradict Dr. Ng's opinion that Cardoza could

not sit for one to two hours in a day.  At the administrative hearing, Cardoza, in response to a

question about his ability to stand, said "I sit a lot.  With the pinched nerve, I have to sit a lot.  I

can walk but not very much.  I have to stand a lot."  R. 63.  Cardoza's testimony is consistent

with the ALJ's conclusion that he could perform sedentary work, see R. 39-40, and is not

consistent with Dr. Ng's opinion that Cardoza could only sit for one to two hours total during an

eight-hour day.  Certainly, as Cardoza notes, Dr. Ng "examined Mr. Cardoza at least thirty-four

times," Pl. Mem. at 18; see 732-848, and there are differing opinions presented in the medical

record.  But even if Dr. Ng's opinion's were "well supported by objective medical tests and

clinical findings" in the record, Pl. Mem. at 17, it is within the ALJ's discretion to resolve

"[g]enuine conflicts in the medical evidence."  Veino, 312 F.3d at 588; see also Fiorello v.

Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ need not "reconcile explicitly every

conflicting shred of medical testimony"); accord Camara v. Colvin, 2013 WL 5870059, at *5

(S.D.N.Y. Oct. 23, 2013) ("[E]ven if substantial evidence did support both viewpoints here, the

Court must uphold the Commissioner's finding.  'Where there is substantial evidence to support

either position, the determination is one to be made by the factfinder.'") (quoting Alston v.

14

Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Other evidence supported the ALJ's conclusion that Cardoza could do sedentary work and could walk a moderate amount. For example, in July 2014, Dr. Gitkind reported straight leg raise tests were negative bilaterally, that Cardoza had full strength in the hip flexors, quadriceps, hamstrings, dorsiflexors, extensor hallucis longus, and plantar flexors. R. 534-35. Dr. Portnoy found only moderate limitations in plaintiff's exertional abilities and found full strength in all extremities and other favorable results, including a normal gait and stance. R. 398-400. Because there is substantial evidence in the record that contradicts Dr. Ng's opinions, the ALJ could properly give limited weight to Dr. Ng's opinions.

### B. Consideration and Severity of Claimant's Asthma

The ALJ found that Cardoza's asthma was "considered stable" and therefore would not "significantly limit [Cardoza]'s ability to perform basic work activities." R. 29. The ALJ also noted that Cardoza did not allege any respiratory impairment as a medical condition on his initial Disability Report. R. 29; see R. 301. The ALJ gave "some weight" to the consultative examination performed by Dr. Portnoy, except to the extent of her finding that, in part due to his asthma, Cardoza "should avoid environments of high particulate or dust matter, . . . lowered oxygen tension . . . [, and] activity in environments in extremes of heat and cold." R. 34, 401. This finding, the ALJ explained, was "not consistent with the evidence . . . ." R. 34. In her hypothetical to the VE, the ALJ did not include asthma as a functional limitation or restriction, R. 39, and did not expressly mention asthma in the list of factors she considered in determining Cardoza's RFC, R. 30.

Cardoza contends that the ALJ's categorizing of his asthma condition as "non-severe" was erroneous because his "asthma fluctuated and was not always considered stable." Pl. Mem.

at 19.  He points to evidence in the record where his source physicians described the asthma as "moderate persistent" or "uncontrolled."  Id.  He claims that the ALJ erred when she found Dr. Portnoy's consultative examination to be inconsistent with the evidence in the medical records. Id.  Cardoza also argues that even assuming the asthma was non-severe, the ALJ erred because she failed to consider it when determining Cardoza's RFC.  Id. at 19-20.

Under the Commissioner's regulations, an alleged impairment is "severe" only "if it significantly limits an individual's physical or mental abilities to do basic work activities."  SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1520(c).  A "non-severe" impairment is one that is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."  SSR 96-3p, 1996 WL 374181, at *1; accord Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987).  Basic work activities include the following: "'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations.'"  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (alterations in original) (quoting Gibbs v. Astrue, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008) and 20 C.F.R. § 404.1521(b)[3]).  "[T]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment,' is not, by itself, sufficient to render a condition 'severe.'"  Taylor, 32 F. Supp. 3d at 265 (quoting Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

Although "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's

---

[3]  "Basic work activities" are currently defined under 20 C.F.R. § 404.1522(b).

ability to work,'" Rosario v. Apfel, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting

Bowen, 482 U.S. at 154 n.12), the ALJ must take into account the cumulative effects of ailments,

including those that are non-severe.  20 C.F.R. § 404.1545 ("We will consider all of your

medically determinable impairments of which we are aware, including your medically

determinable impairments that are not 'severe.'"); accord Dixon v. Shalala, 54 F.3d 1019, 1031

(2d Cir. 1995).  As stated above, "[e]ven where the administrative record may also adequately

support contrary findings on particular issues, the ALJ's factual findings must be given

conclusive effect so long as they are supported by substantial evidence."  Genier, 606 F.3d at 49

(per curiam) (citation and internal quotation marks omitted).

　　　　With respect to the ALJ's conclusion that the asthma condition was non-severe, R. 29,

this finding is supported by the notes and opinions of treating physicians Dr. David Appel, see

R. 531, and Dr. Lynne Portnoy, see R. 401, and from the notes of Cardoza's visits to

Neighborhood and Family Health Center, see, e.g., R. 378, and the Casa Maria Community

Health Center, see R. 973.  Certainly, there are indications that Cardoza had a diagnosis of

asthma.  Records from an October 22, 2013, visit to Neighborhood and Family Health Center

reveal that the facility listed asthma in Cardoza's past medical history.  R. 367.  The same was

noted by treating physician Dr. Massey on December 26, 2013, who also noted that although

Cardoza "reports that he has been hospitalized several times for asthma, . . . it has not been in a

long time" and he was "unable to remember any details about [the hospitalizations]."  R. 390.

That same day, Dr. Portnoy noted that Cardoza had been diagnosed with asthma "since

childhood" and that he "uses Ventolin and a home nebulizer as needed."  R. 397.  Other medical

appointments confirm Cardoza's asthma diagnosis.  See, e.g., R. 973 (January 2016), R. 551

(November 2015), R. 528 (October 2015), R. 992 (September 2015), R. 422 (April 2014).

Beyond a diagnosis, however, there was virtually no evidence that Cardoza's asthma caused more than a minimal effect on his ability to work. As part of an annual exam in August 2013, the Neighborhood and Family Health Center noted that Cardoza's asthma was "stable" and ordered a refill of his abuterol medication. R. 378. Dr. Portnoy found that the asthma was "stable" in December 2013. R. 401. In October 2015, Dr. Appel of Montefiore concluded that Cardoza's asthma was "[v]ery well-controlled with no symptoms, no findings, and no adverse effects . . . ." R. 531. In January 2016, Casa Maria Community Health Center reported that the asthma was "uncomplicated" and "[s]table." R 975; accord R. 973. Here, because substantial evidence supports the ALJ's conclusion that Cardoza's asthma was not a severe impairment, it must be upheld.[4]

Cardoza argues in the alternative that the ALJ erred because she failed to consider the asthma impairment when determining his RFC. Pl. Mem. at 19-20. However, the ALJ specifically considered Dr. Portnoy's opinion that Cardoza "should avoid environments of high particle or dust matter or lowered oxygen tension, as well as activity in environments in extremes of heat and cold." R. 34. The ALJ declined to give this opinion weight because is was "not consistent with the evidence . . . ." Id. In fact, there was no evidence in the record to support Dr. Portnoy's opinion in this regard. In determining the RFC, the ALJ took into account all severe and non-severe ailments, see R. 28-29, and specifically considered the asthma condition and Dr. Portnoy's opinion. As explained above, the record did not reflect limitations attributable to asthma. Indeed, Cardoza had denied any problems with asthma in April 2015. R.

_____

[4] Additionally, Cardoza does not point to any evidence in the record suggesting that his asthma contributed to any functional limitations. As stated above, Cardoza did not allege any respiratory impairment as a medical condition on his initial Disability Report. R. 29; see R. 301. Cardoza denied the existence of asthma issues on one occasion. See R. 557 (April 2015).

557. The ALJ's RFC determination was thus supported by substantial evidence.

## C. Weight of the Psychiatric Consultive Examination

Cardoza argues that the ALJ erred in giving Dr. Massey's opinion that Cardoza had certain deficits in "attention and concentration" and "recent and remote memory skills," R. 393-94, only "some weight," and that Dr. Massey's opinion was consistent with the record as a whole. See Pl. Mem. at 20. In determining Cardoza's RFC, the ALJ gave Dr. Massey's opinion "some weight" because the "the record [did] not support marked limitations" in Cardoza's ability to mentally function. R. 36. The ALJ found that Cardoza was able to "have occasional interaction with supervisors and coworkers, but no interaction with the general public." R. 30. She found that he "can understand, remember, and carry out simple instructions, but cannot perform complex or detailed instructions," and can "occasionally respond to changes in a routine work setting." Id. The ALJ based her findings in part on the record evidence that Cardoza was diagnosed in July 2013 with "major depressive disorder and anxiety disorder," R. 35; see R. 407, and on additional treatment notes from October 2013 to September 2014 that reflected the depressive disorder, R. 35; see R. 684-85, 939-40. Based on the same reports, the ALJ noted that Cardoza's memory was intact, that his speech was clear, and that his "[r]easoning, impulse control, and judgment were fair." R. 35; see R. 684-85, 939-40. The ALJ also detailed Cardoza's Global Assessment of Functioning ("GAF") scores, finding them to reflect "[s]ome impairment in reality testing or communication or major impairment in several areas," including at "work." R. 35; see R. 685.[5] The ALJ also noted a second GAF score that signaled "mild"

---

[5] A GAF, or "global assessment of functioning," score is a scale that was "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" Kohler v. Astrue, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (alterations in original) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM") 32 (4th ed. 2000)). "GAF scores may be relevant to an

symptoms, which reflected potential issues with Cardoza's social environment functioning.

R. 35; see R. 710.[6]

The ALJ summarized Dr. Massey's opinion in great detail, noting, among other things, the following: Cardoza had never been hospitalized for "any psychiatric reason and did not have a history of seeing a therapist"; though Cardoza "reported a suicide attempt in 2002," he has had no "attempt or plan since" and has "denied any suicidal ideation"; "eye contract was appropriate"; "speech was fluent and clear"; and Cardoza was "oriented with mildly impaired attention and concentration and moderately-to-markedly impaired recent and remote memory skills." R. 35; see R. 390-95 (Dr. Massey's report). The ALJ considered Dr. Massey's views on Cardoza's ability to perform daily tasks of grooming and dressing and that he needed help cooking and cleaning. R. 36. Finally, the ALJ considered Dr. Massey's finding that Cardoza's ability to concentrate was "mildly impaired," that Cardoza had a history of prior substance abuse, and that his "abilities to learn new tasks and perform complex tasks were moderately to markedly impaired." R. 36; see R. 394. As the ALJ noted, R. 36, Dr. Massey found that "[t]he

---

ALJ's severity and RFC determinations, although they are intended to be used to make treatment decisions . . . and not disability determinations." Gonzalez v. Colvin, 2016 WL 4009532, at *5 (W.D.N.Y. July 27, 2016) (alteration in original) (internal quotation marks and citation omitted). As reflected in the Fifth Edition of the DSM, published in 2013, the GAF scale is "no longer in use." Kaczkowski v. Colvin, 2016 WL 5922768, at *12 (S.D.N.Y. Oct. 11, 2016).

[6] The ALJ gave the GAF scores "little weight" because "they are snapshots in time." R. 37. Cardoza argues that the GAF scores indicate a "major impairment" and that his limitations were severe. Pl. Mem. at 21; Pl. Reply at 3-4. The Court has considered Cardoza's arguments regarding the GAF scores. But because the ALJ's reasoning and decision regarding Dr. Massey's psychiatric consultative examination are supported by substantial evidence, we need not opine separately as to whether the GAF scores themselves were given proper weight. Cf. Tilles v. Comm'r of Soc. Sec., 2015 WL 1454919, at *33 (S.D.N.Y. Mar. 31, 2015) (noting that "the GAF is a less useful metric than some earlier cases report, as it has been removed from the DSM-V," and that even "prior to the release of the DSM-V in 2013, courts have held that an ALJ's failure to consider every GAF score is not a reversible error") (citation and internal quotation marks omitted).

results of the examination appear to be consistent with psychiatric problems, <u>but in itself does not appear significant enough to interfere with the claimant's ability to function on a daily basis</u>."  R. 394 (emphasis added).

In addition to the above, the ALJ considered other record evidence when considering the effect of Cardoza's psychiatric limitations on his RFC.  This includes Dr. Kennedy-Walsh's opinion that Cardoza could "understand, remember, and carry out simple instructions," R. 36 (citing R. 88); NY Psychotherapy and Counseling Center's September 2015 report that Cardoza was not receiving psychiatric therapy, but that he had done so in the past and that his current medication was helping, R. 36 (citing R. 618); and Dr. Blitz's testimony that Cardoza, due to his anxiety and depressive disorders, was "limited to simple, routine tasks," R. 37, and that his ability to function in such a manner depended on "compliance with his medication," R. 58-59.

Cardoza contends that the ALJ erred in affording Dr. Massey's opinion only "some weight" because the record corroborates Dr. Massey's opinions, and because the ALJ should have considered the importance of an in-person examination in the mental health context.  Pl. Mem. at 22 (citing <u>Canales v. Comm'r of Soc. Sec.</u>, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010)).  He claims that he has "consistently been diagnosed with a mental health impairment," and specifically that it is been diagnosed at as a "major impairment."  Pl. Mem. at 20-21.  Cardoza also appears to argue that at least one of his prognoses assumed a continued course of prescription medications, and that his demonstrated inability to "make appropriate decisions" regarding his everyday life renders this assumption faulty.  <u>See</u> Pl. Mem. at 21-22.  In other words, Cardoza appears to argue that there is no guarantee that he would continue to take his medication as prescribed, thus leaving the possibility for his limitations to become "more significant."  <u>Id.</u> at 22 (emphasis omitted).  Finally, Cardoza argues that his "moderate[] to

marked[] impair[ments]" are corroborated by "the fact that [he] appeared late at his hearing," an event "critically important to his future."  Pl. Mem. at 22.

Unlike a treating source, "a 'nontreating source' is defined as a 'physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].'"  Calixte v. Colvin, 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016) (quoting 20 C.F.R. § 416.902).  A consultative examiner, such as Dr. Massey, is considered a non-treating source.  See Dannettel v. Comm'r of Soc. Sec., 2014 WL 4854980, at *7 n.4 (N.D.N.Y. Sept. 30, 2014).  While the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," Selian, 708 F.3d at 419, a consultative physician's opinion may nonetheless constitute substantial evidence, Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011).  When weighing the opinion of a non-treating source, the ALJ must consider how closely the opinion aligns with the objective medical record evidence, which is similar to its evaluation of a treating source.  See Zongos v. Colvin, 2014 WL 788791, at *7 (N.D.N.Y. Feb. 25, 2014).

Especially "[i]n the case of mental disabilities, the results of a single examination may not adequately describe the claimant's sustained ability to function.  It is, therefore, vital that [a court] review all pertinent information relative to the claimant's condition, especially at times of increased stress."  Corporan v. Comm'r of Soc. Sec., 2015 WL 321832, at *28 (S.D.N.Y. Jan. 23, 2015) (internal quotation marks, citation, and additional brackets omitted; first set of brackets supplied).

Substantial record evidence, which the ALJ considered in detail, exists to support the ALJ's decision to accord Dr. Massey's opinion "some weight."  Specifically, substantial evidence exists that supports the ALJ's conclusion that "the record does not support marked

limitations" stemming from Cardoza's psychiatric illnesses. R. 36. To be sure, Dr. Massey's conclusion that Cardoza had mental health impairments of depression and anxiety are consistent with the record. See R. 394 (Dr. Massey); R. 407 (Dr. Francisco J. Gonzalez-Franco); R. 684 (Clay Ave Health Center). In fact, the ALJ's decision acknowledges and details Cardoza's limitations stemming from his mental illnesses. R. 36. Further supported are the ALJ's conclusion and reasoning that the limitations did not rise to the level of "marked limitations." Id. First, the ALJ noted that Dr. Massey's report itself found that Cardoza's psychiatric problems did not "appear significant enough to interfere with the claimant's ability to function on a daily basis." R. 36; see R. 394. This itself could constitute substantial evidence based on the ALJ's discretion in weighing the opinions of the medical examiners in the record. See Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (citation and internal quotation marks omitted) (recognizing "that the resolution of genuine conflicts between the opinion of the treating source, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder"). But the ALJ relied on additional record evidence. She considered Dr. Kennedy-Walsh's opinion that Cardoza could carry out simple instructions and that his "concentration was not impaired in a low pressure work setting" despite his anxiety and depression. R. 36. The ALJ also considered Dr. Blitz's opinion that Cardoza would have to avoid contact with the general public, but that he could function performing simple, routine tasks despite his limitations. R. 37. As stated above, it is within an ALJ's discretion to resolve "[g]enuine conflicts in the medical evidence." Veino, 312 F.3d at 588. Thus, even if evidence exists in the form of Dr. Massey's opinion of "marked limitations," the ALJ relied on substantial evidence in the record to the contrary.

Moreover, Cardoza is incorrect when he suggests that the ALJ found Dr. Massey's

opinion to be contrary to the record.  See Pl. Mem. at 20.  In fact, the ALJ found that Dr.

Massey's opinion was "generally consistent with the evidence."  R. 36.  But the ALJ went

further, and consistent with the Second Circuit's directive that "ALJs should not rely heavily on

the findings of consultative physicians after a single examination," Selian, 708 F.3d at 419, the

ALJ also considered the notes and psychiatric opinions of Dr. Kennedy-Walsh, NY

Psychotherapy and Counseling Center, and specialist Dr. Blitz in making her RFC

determination.  See R. 36-37.  Those records show that notwithstanding Dr. Massey's opinion

that Cardoza had certain psychiatric limitations, those limitations would not "interfere with [his]

ability to function on a daily basis."  R. 36.  Finally, even accepting the possibility that Cardoza

may not consistently take his medication, this fact would not call into question the ALJ's

reliance on substantial evidence in assigning Dr. Massey's opinion "some weight."  Because

substantial evidence in the record exists showing that Cardoza's psychiatric limitations were

adequately considered and weighed by the ALJ, we find no error in her giving "some weight" to

Dr. Massey's opinions.

    D.  Consideration of Claimant's Obesity

Cardoza next argues that the ALJ erred in failing to "explain how she reached her

conclusions on whether obesity alone or in combination with Mr. Cardoza's other impairments

impacted his ability to function."  Pl. Mem. at 23.  In making her disability determination, the

ALJ considered Cardoza's weight and obesity in several instances.  First, she noted obesity as

one of Cardoza's "severe impairments."  R. 28.  She also reviewed several times the medical

record evidence that specifically noted Cardoza's obesity, body mass index, or weight.  See

R. 31 (citing, e.g., R. 370, 551, 868, 902); id. (the ALJ concluded that "[e]xaminations were

essentially normal, except for a weight over 270 pounds").  The ALJ also took into consideration

treating and other physician opinions concerning Cardoza's weight, <u>see</u> R. 34 (Dr. Portnoy's opinions and findings), and considered weight gain in combination with his other physical and psychological ailments, <u>see</u> R. 35, 38 ("while the claimant alleged to a consultative examiner that he had an increased appetite with weight gain of 80 pounds over the prior year and suicidal ideation, in treatment notes the claimant indicated that he did not overeat or have poor appetite"). Cardoza argues that the ALJ failed to explain her decision-making concerning the obesity in steps three, four, and five of her analysis.  <u>See</u> Pl. Mem. at 23-24 (citing SSR 02-1p).

Under SSR 02-1p, obesity may be considered "severe" — and thus medically equal to a listed disability — if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  <u>See</u> SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859, 57861-62 (Sept. 12, 2002), 2002 WL 34686281, at *4.  "Obesity is not in and of itself a disability," and courts have held that "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  <u>Guadalupe v. Barnhart</u>, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citing Titles II and XVI: Evaluation of Obesity, SSR 00–3p, 2000 WL 33952015 (May 15, 2000)) (additional citations omitted).  But while "[t]he SSA removed obesity from the list of impairments in October 1999[,] . . . the ALJ must consider the effects of obesity in combination with other impairments throughout the five-step inquiry."  <u>Dieguez v. Berryhill</u>, 2017 WL 3493255, at *3 (S.D.N.Y. Aug. 15, 2017) (citations omitted); <u>accord</u> <u>Battle v. Colvin</u>, 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014).  "'Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities.'"  <u>Battle</u>,

2014 WL 5089502, at *5 (quoting <u>Farnham v. Astrue</u>, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011)) (citing cases); <u>accord</u> <u>Cahill v. Colvin</u>, 2014 WL 7392895, at *27 (S.D.N.Y. Dec. 29, 2014).

Here, the ALJ discussed Cardoza's weight in the context of the medical examinations by his physicians and considered the findings of the medical examiners as a whole and in combination with other ailments. <u>See</u> R. 28, 31, 33, 34, 35, 37, 38. Specifically, the ALJ's decision discussed record evidence of Cardoza's obesity, <u>see</u> R. 31, 34, 35, 37, and the ALJ's RFC assessment specifically mentioned his obesity, <u>see</u> R. 31, 33-34, 35. Additionally, the record contains ample evidence from doctors who accounted for Cardoza's obesity, <u>see</u>, <u>e.g.</u>, R. 431, 525, 530, 538 (notes from Montefiore Medical Center); R. 551, 555, 559, 575, 579 (from Neighborhood and Family Health Center); R. 627 (NY Psychotherapy and Counseling Center); R. 644 (Dr. Ng); R. 868, 902, 908 (Lincoln Medical and Mental Health Center); R. 970 (Casa Maria Community Health Center). Because the ALJ considered this record evidence, including the opinions of treating and other physicians, and found obesity to be a severe ailment, she took into account Cardoza's obesity in steps three, four, and five of her analysis. <u>See</u> <u>Guadalupe</u>, 2005 WL 2033380, at *6 ("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions.") (citation omitted).

Cardoza's argument that the ALJ failed to explicitly explain her decision making, <u>see</u> Pl. Mem. at 23-24 (citing SSR 02-1p), also fails. This is because the ALJ considered Cardoza's obesity as noted above, explicitly discussed the obesity in connection with other ailments, including psychological ailments, and factored it into her RFC assessment. This is sufficient under SSR 02-1p. <u>See</u> <u>Drake v. Astrue</u>, 443 F. App'x 653, 657 (2d Cir. 2011) ("the ALJ

implicitly factored [claimant's] obesity into his RFC determination by relying on medical reports that repeatedly noted [claimant's] obesity"); accord Corsi v. Colvin, 2013 WL 5504430, at *8 (W.D.N.Y. Oct. 2, 2013) (SSR 02-1p was satisfied when the ALJ sufficiently considered obesity in determining the claimant's RFC); Miller v. Astrue, 2013 WL 789232, at *11 (E.D.N.Y. Mar. 1, 2013) (same); see also Mancuso v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010) (ALJ did not err in consideration of obesity where "there [was] no factual basis for thinking that 'any additional and cumulative effects of obesity' limited [the claimant's] ability to perform light work") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q); Marthe v. Colvin, 2016 WL 3514126, at *5 (W.D.N.Y. June 28, 2016) (SSR 02-1p not satisfied and case remanded where ALJ's only consideration of claimant's obesity was ALJ's "self-serving comment, at step two, that he adequately considered SSR 02-1p regarding Plaintiff's obesity, both singly and in combination with her underlying impairments") (internal quotation marks, brackets, and citation omitted). Based on the evidence considered by the ALJ and the record as a whole, the ALJ sufficiently considered and explained her decision-making regarding Cardoza's obesity.

    E.  Omission of Use of the Cane in the ALJ's Hypothetical to the Vocational Expert

Cardoza argues that the ALJ erred because she did not include his use of a cane in her hypothetical to the VE. Pl. Mem. at 24-25. It is undisputed that Cardoza used a cane to walk, see, e.g., R. 89, 100, 315, 392, 398-99, 422, 426, 539, 644, and that the cane had been prescribed and was medically necessary, see R. 972 (prescription for cane); accord R. 399, 448-49, 641-42. The ALJ discussed Cardoza's use of a cane during the RFC analysis. See R. 32, 33, 34, 35, 37.

In discussing the use of a cane and the performance of sedentary work, Cardoza relies upon Social Security Ruling 96-9p, which provides, in relevant part:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like

docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.  Sitting would generally total about 6 hours of an 8-hour workday.  Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions. . . .

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.  For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee) or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers.  On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

1996 WL 374185, at *3, *7 (footnote omitted).

The problem here is that the ALJ did not consult a vocational resource to make a judgment as to how Cardoza's use of a cane would affect his ability to perform work.  As the Second Circuit has noted, "[a]t Step Five [in the disability evaluation process], the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform," and an "ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert."  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).  An ALJ may rely on a vocational expert's testimony

28

presented in response to a hypothetical if there is "substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983) (footnote omitted); accord De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 936 (2d Cir. 1984) (where the ALJ does not present "the full extent"of plaintiff's physical disabilities to the vocational expert, "the record provides no basis for drawing conclusions" about whether the plaintiff's limitations render him disabled); Pritchard v. Colvin, 2014 WL 3534987, at *10 (N.D.N.Y. July 17, 2014) ("If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.") (citation omitted).

An ALJ certainly is "not required to incorporate restrictions into the RFC or pose a hypothetical to [a vocational expert] that [is] not supported by the record." Margotta v. Colvin, 2014 WL 2854623, at *13 (S.D.N.Y. June 23, 2014) (citing Dumas, 712 F.2d at 1554). Here, however, the Commissioner does not contest the cane was medically necessary. See Def. Mem. at 7, 9, 10, 15, 18, 20 (noting Cardoza's use of a cane in summarizing the record evidence). Moreover, Cardoza testified at his hearing that he used a cane "all the time," R. 63, and the record is replete with instances of medical examiners noting Cardoza's use of a cane, see R. 89, 100, 392, 398-99, 422, 426, 539, 644.

In Suarez v. Colvin, 2014 WL 5099207 (S.D.N.Y. Oct. 1, 2014), this same issue arose. That is, the claimant used a medically-prescribed cane and this fact was not presented to the VE. Id. at *12. Suarez remanded the case so that this error could be corrected. Cardoza cited to Suarez in his initial brief. Pl. Mem. at 25. Yet the Commissioner did not address it — either by distinguishing it or by arguing that it was wrongly decided. Instead, the Commissioner argued

that because the ALJ's hypothetical to the VE was based on an RFC supported by substantial evidence, it must follow that the ALJ could properly rely on the VE's testimony that there were jobs in the national economy that Cardoza could perform. See Def. Mem. at 42.

But the sole case the Commissioner cites in support of this position, Calabrese v. Astrue, 358 F. App'x 274 (2d Cir. 2009), see Def. Mem. at 42, states that an "ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence . . . and accurately reflect the limitations and capabilities of the claimant involved." Calabrese, 358 F. App'x at 276 (citation omitted) (emphasis added). The Commissioner does not explain why the omission of the cane from the hypothetical to the VE permits us to conclude that the hypothetical was an "accurate[]" reflection of Cardoza's limitations. The omission of the use of a cane was material because, as SSR 96-9p makes clear, the "occupational base for an individual who must use [a hand-held assistive] device for balance because of significant involvement of both lower extremities . . . may be significantly eroded." 1996 WL 374185, at *7; see, e.g., Blanket v. Berryhill, 2017 WL 2234184, at *4 (E.D. Wash. May 22, 2017) (where the "VE gave no testimony regarding whether the jobs he identified could be performed if Plaintiff required the use of a cane," the court remanded so that the ALJ could "make a finding regarding the circumstances under which Plaintiff's use of a cane is necessary and when it became necessary"); Suarez, 2014 WL 5099207, at *12, *14 (remanding in part because the ALJ relied on the VE's testimony in response to the ALJ's hypothetical that omitted any reference to the plaintiff's use of a cane); Steigerwald v. Comm'r of Soc. Sec., 2013 WL 5330837, at *7 (N.D. Ohio Sept. 23, 2013) ("Upon remand, the ALJ should clearly indicate whether the use of a hand-held assistive device was medically required and, if so, provide an appropriate hypothetical to the VE.") (footnote omitted); cf. Durfee v. Berryhill, 2017 WL

877272, at *5 (D.R.I. Feb. 15, 2017) (no error in the ALJ's omission of use of cane in the VE hypothetical because of the "the complete absence of the required medical documentation to support that Plaintiff's use of the can[e] was medically required").  The VE here was never asked to opine on the availability of jobs for a person with Cardoza's RFC who uses a cane. Accordingly, we cannot be assured that the VE identified jobs that Cardoza would be able to do. On remand, the ALJ must present to the VE a hypothetical that includes the fact that Cardoza uses a cane.

F.  The Vocational Expert's Testimony

Cardoza briefly argues that "[t]he ALJ [s]hould have found Mr. Cardoza disabled based on the VE's testimony."  Pl. Mem. 25.  Cardoza's argument seems to center on the VE's testimony that it would be unacceptable to be "off task" for more than "six minutes every hour" or to "miss work more often than once a month."  Id.  Cardoza argues that he would "exceed the amount of time permitted to be off task and the allowed absences."  Id. at 26.  To support this argument, he notes that he was late to the ALJ hearing, missed some mental health appointments, and testified that he sometimes becomes fatigued.  He also notes that there are records showing he was in pain.  Id.

While he does not frame his argument in such terms, essentially his argument is that the ALJ improperly failed to find that he would be unable to perform work regularly.  We reject this argument.  The fact that Cardoza was late to the hearing, experienced pain, and missed some appointments hardly required the ALJ to conclude that he would be late to or miss work on a regular basis.  As for his testimony about fatigue, the ALJ could properly rely on Dr. Massey's opinion that Cardoza "is able to . . . maintain a regular schedule."  R. 394; see R. 36.

IV.  CONCLUSION

For the foregoing reasons, Cardoza's motion for judgment on the pleadings (Docket # 13) is granted and the Commissioner's motion for judgment on the pleadings (Docket # 21) is denied. This case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: New York, New York
February 12, 2019

GABRIEL W. GORENSTEIN
United States Magistrate Judge